UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                    Case No.: 8:19-CR-132-T-24AAS

LUIS CRUSSEST BALLART
_____/

### RESPONSE TO GOVERNMENT'S MOTION FOR DOWNWARD DEPARTURE AND SENTENCING MEMORANDUM

**COMES NOW**, the Defendant, **LUIS CRUSSEST BALLART,** through undersigned counsel, and files this sentencing memorandum to support a reasonable sentence. As grounds in support thereof, Mr. Ballart shows:

Mr. Ballart, age 58, was born and raised in a small town in Catalan, Spain. The Fascist dictator Francisco Franco was still in power, and at an early age Mr. Ballart formed Anti Facist learnings from his Father. His grandfather was a loyalist in the Spanish Civil War opposing Franco. Because of this Mr. Ballart's formative years were set during an anxious time for his family.

His father was a butcher with Anti-Fascist politics. The family always had to be concerned about visits from the Fascist police. Mr. Ballart as an adolescent, did not handle the stress well. He recalls being situationally depressed during most of his childhood. At 15 he was apprenticed to a photographer and he learned the trade of a freelance photo journalist. He speculates that he chose his profession because of how stifling his village life was under a Fascist regime. Masking depression at the age 22 he began to daily use heroin. Happily, he completed two extensive drug treatment programs while in Spain and broke the cycle of heroin addiction.

However, he found it difficult living in Spain and wanted to remove himself from the

1

environment that allowed him to continue to work successfully and use heroin. He has always known how to sail but at this point he became very serious about solo sailing to keep him occupied and not to use. Over the last 15 years he has made four transatlantic sails from Spain to South America. Each sail involved significant alone time that allowed him to work hard on remaining sober.

He lived in different parts of Latin America making sufficient funds from his photography to support himself while living on his sailboats. When his parents both died he received with his siblings a portion of the parent's residence. With the funds from closing the estate he purchased a 60 foot sailing Ketch. He sold his other sailboats to make up the balance of the purchase price. His plan was to sail this boat as a tourist attraction. He would take people on day sails and sunset cruises. He then hit upon charging $500 per person to transport adventuresome backpackers from Columbia to Panama and back. He could fit six people at a time and have a decent return on his investment.

Unfortunately the tourist industry collapsed and he was having a very difficult time maintaining this newer large boat. He had mechanical issues. He attempted to sell it so he could purchase a smaller boat. At first he found no takers.

Finally, he was approached by the individuals who placed him in this conspiracy with the promise they would buy his boat for $150,000. But for this to occur he must sail the boat to Panama with cocaine on board. When Mr. Ballart informed the potential buyers that the boat was not capable without repairs of making it to Panama they fronted him over $30,000 for repairs.

He now looks upon this decision as complete folly. Not just because he ruined his life and wound up incarcerated, but to trust such people seems to him a very grievous mistake. Out of economic necessity he entered an arrangement with the only people willing to buy his boat. He

will pay for that decision for a long time.

Now in the United States he recognizes the true nature of the effects of cocaine on this culture and feels tremendous remorse at his actions. He had been an addict, and can see the results of addiction in the jails he has been housed in. When he was first arrested he immediately gave a full and complete statement to the Coast Guard and the agents about his involvement, did not prevaricate or hide any information. Because of this he knows he may not be able to return to Columbia. Wherever he goes he must start fresh. His only real asset was his sailing vessel, which was sunk by the Coast Guard.

*See* PSR ¶ 46.[1]

**The government's proposed § 5K1.1 motion**

Mr. Ballart has cooperated fully with authorities since his arrest and understands that the government is filing a "substantial assistance" motion under U.S.S.G. § 5K1.1. The government recognizing Mr. Ballart's cooperation as to individuals involved in narco trafficking has recommended this court depart eight levels. The defendant supports this motion as it accurately reflects the extent and importance of his cooperation. 18 U.S.C. § 3553(e).

As this Court is aware, once the § 5K1.1 motion is filed, the departure lies in the district court's discretion, not the government's. *United States v. Foster*, 988 F.2d 206, 208 (D.C. Cir. 1993). Once setting the downward departure motion in process, the government cannot dictate the extent to which the Court will depart. *United States v. Udo*, 963 F.2d 1318, 1319 (9th Cir. 1992). *Udo* was remanded because the district court erred in concluding that it had no authority to depart below government recommendations. The Eleventh Circuit, in *United States v. Pippin*, 903 F.2d 1478, 1485 (11th Cir. 1990), has ruled similarly. The Policy Statement for U.S.S.G. § 5K1.1

---

[1] In addition to facts outlined in the PSR, ¶¶ 42-55, this memorandum includes information provided by Mr. Ballart in conversations with counsel.

provides this Court with factors to consider in determining the extent of reduction:

> Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.
>
> (a) The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:
>
> > (1) The court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;
> >
> > (2) The truthfulness, completeness, and reliability of any information or testimony provided by the defendant;
> >
> > (3) The nature and extent of the defendant's assistance;
> >
> > (4) Any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;
> >
> > (5) The timeliness of the defendant's assistance.

U.S.S.G. § 5K1.1. Substantial Assistance to Authorities (Policy Statement).

Judged by each of the five criteria, Mr. Ballart's cooperation merits a meaningful departure. Clearly, his assistance has "significance and usefulness," because it bears directly on the investigation and prosecution of other individuals involved in the transporting by boat of narcotics. He has been debriefed eight times and testified. As for "truthfulness, completeness, and reliability," Mr. Ballart's statements truthfully and reliably reflected his knowledge of the facts he provided to the government, and were as complete as he could make them. Mr. Ballart's cooperation was timely. He placed himself at the discretion of the United States of America and provided useful information.

Finally, about "any danger or risk of injury to the defendant or his family resulting from his assistance," – we, who take for granted a social order governed by law, could only tremble at the danger Mr. Ballart now faces because of his cooperation with U.S. authorities. Mr. Ballart's

decision to assist the government was made with the knowledge of the dire risk to himself stemming from his assistance to the government. Mr. Ballart's cooperation with U.S. authorities is already known – and it may likely be meet with retaliation – against which, U.S. authorities can offer little protection once he is deported. The United States Attorney's Office follows strict guidelines when recommending how many levels to depart. This Court, however, may impose any sentence it deems reasonable. Mr. Ballart believes he may have a fair and appropriate reduction of his sentence, and he believes that the government's recommendation is reasonable based on his extensive cooperation. He cooperated immediately, in every way in his power and at risk to himself. Although guilty of a serious criminal offense, he has risked much by cooperating fully with the government, and he merits consideration by this Court, under U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e)a

**Variance under *United States v. Booker* and Application of 18 U.S.C. § 3553(a)**

Mr. Ballart regrets his commission of a serious federal crime and understands the need for punishment. He submits, however, that the nature and circumstances of his offense, and his personal history and characteristics, support a sentence after a eight level USSG 5K1 reduction, to 57 months in prison.

**The purposes of sentencing**

Section 3553(a)(2) sets forth the purposes of sentencing, which can be summarized as:

(1) just punishment;
(2) deterrence;
(3) protection of the public; and
(4) rehabilitation.

Mr. Ballart submits that each purpose would be achieved by a sentence of Fifty-seven (57) months.

**Just Punishment**

Mr. Ballart's conduct, participating to smuggle illegal drugs, violated law and must be justly punished -- constituting retribution while promoting respect for the law and demonstrating to the offender and to others the reprehensibility of the offense. Here, since Mr. Ballart has no history of violence, and no violence was involved in the offense, just punishment can be achieved with Fifty-seven (57) months of incarceration.

Fifty-seven (57) months will be hard to bear with an individual whose family members are outside the United States and are unlikely to visit him in prison.

**Deterrence – specific and general**

As for specific deterrence (i.e., specifically affecting Mr. Ballart), little statistical data is available regarding recidivism rates in cases like this, in which the offender is located outside the United States and is subject to personal and economic conditions that scarcely exist. However we do know that based on his age and the length of a 57 month sentence, his recidivism rates drop significantly. The longer he is incarcerated the recidivism rates actually increase. At any rate, any added period of incarceration beyond Fifty-seven (57) months would be mere surplus age – taxpayer funded punishment for its own sake that returns no social benefit.

As for general deterrence, by any standard, Fifty-seven (57) months in federal prison followed by summary deportation surely is severe punishment for an offense that took place entirely outside the United States and involved no weapons or violence.

**Protection of the Public**

Other than, the general threat posed by the trade in illegal drugs the safety and wellbeing of the public are not at stake here. Mr. Ballart has no history of violence or of crimes against persons. There is no other indication he poses any danger to the public.

**Rehabilitation**

Mr. Ballart, reflecting on the wrong he has done, wishes to move forward, complete his punishment, and return to his work. Given his need for vocational skills, it is not clear if he will receive vocational training beyond a GED in English. It would be unfortunate that (as an undocumented alien) he may not qualify for prison rehabilitative programs such as job training. The time he spends in prison will be "pure punishment" – a further reason for limiting his sentence to Fifty-seven (57) months and permitting him to return to his former law abiding life, family and such gainful employment as is available.

**The kinds of sentences available (and related costs)**

Since in this case only incarceration (followed by deportation) is available, the cost of this punishment is a relevant consideration. At the rate of $34,777 per year (PSR ¶ 64), any incarceration beyond that which is necessary represents an unjustified expenditure of public funds. Mr. Ballart submits that a sentence of Fifty-seven (57) months will accomplish the goals of sentencing at a justifiable cost.

**CONCLUSION**

For the reasons stated herein, Mr. Ballart, respectfully urges this Court to impose a sentence of Fifty-seven (57) months. Such a sentence is reasonable, given the advisory guideline range and the factors at 18 U.S.C. § 3553(a)

DATED this 20th day of September 2019.

    Respectfully submitted,

    DONNA LEE ELM
    FEDERAL DEFENDER

    ***/s/ Frank W. Zaremba***
    Frank W. Zaremba
    Assistant Federal Defender

Florida Bar No.  0277371
400 North Tampa Street, Suite 2700
Tampa, FL.  33602
Telephone: 813-228-2715
Fax: 813-228-2562
Email: Frank_Zaremba@fd.org

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 20th day of September 2019, a true copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send a notice of the electronic filing to:

Diego Novaes, AUSA

*/s/ Frank W.  Zaremba*
Frank W.  Zaremba
Assistant Federal Defender